# NORTH ST. LOUIS BUILDING AND LOAN ASSO-CIATION v. OBERT et al.; FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellant.

## Division One, October 14, 1902.

1. **Surety's Liability:** LIMITATION TO OFFICIAL TERM: INTENTION. If it appears from all the circumstances that the intention of the parties to a fiduciary bond, given to secure a building and loan association against loss by its secretary, was that the contract, being unlimited by its terms to the unexpired part of the secretary's term, should cover his acts of defalcation during his continuance in office, whether by re-election or holding over, the bond will cover the principal's defalcations according to such intention.

2. ———: ———: ———: CONSTRUCTION BY COURT. In attempting to construe a bond so as to arrive at the intention of the parties thereto, the court should put itself in an attitude to view the contract from the same standpoint from which it was seen by the parties when they entered into it.

3. ———: ———: DURATION OF TERM: BURDEN OF PROOF. Where a surety company is trying to limit its liability on a fiduciary bond, given to a company to guarantee an officer's fidelity in office, to defalcations committed by him during the unexpired part of the term he was serving when the bond was made, the burden is on it to show the duration of that term.

4. **Practice:** FAILURE TO FILE REPLY. If the case was tried as if a reply to the answer was filed and issue was joined, it is too late on appeal to make the point that an affirmative allegation in the answer is to be taken as confessed because no reply was actually filed.

5. **Fiduciary Bond:** GUARANTY FOR DEFINITE PERIOD: LIMITATION TO UNEXPIRED TERM. The secretary of a building and loan association was elected in January, 1891, and was in that position when he applied, in pursuance to a legislative act, in October, 1895, to a bond company to become his surety. The only other evidence as to the duration of his term was a minute in the record that he was elected

secretary at a meeting held on March 16, 1896. There was no by-law fixing his tenure. The bond company received $50 from him "as the premium for one year," and issued him a bond, dated October 28, 1895, which was not by its terms limited in duration, but when that year expired a premium for the next year was demanded and paid and what was called a "renewal bond" was issued. *Held*, that the parties to the bond understood that it was to cover any defalcations occurring within one year from the date of the bond, and that it was not their intention to limit it to so much of a term of one year as was unexpired on the date the bond was issued.

6. ———: EXECUTION: DENIAL UNDER OATH. The statute does not mean that the court must hold that a bond which shows on its face that it has not been signed by the principal has been so signed unless its execution has been denied under oath.

7. ———: ———: ———: PRACTICE ON APPEAL. Where the point was not raised in the trial court that the execution of the bond sued on was not denied under oath, but the case was tried on the theory that its execution was a fact in issue, and proof on that issue was heard, the appellate court will not permit the point to be raised on appeal.

8. ———: ———: RENEWAL BOND. Where the penalty of an original fiduciary bond has been exhausted, there can be no recovery on a "renewal bond," which was not signed by the defaulting principal, though executed by the defendant surety.

9. ———: ———: THEORY OF SUIT: LIABILITY OF SURETY. If the instrument sued on is alleged to be a bond executed by a principal and a surety and the judgment conforms to the petition, the appellate court will not dispose of the case on the theory that the surety stands in the relation of an insurer to the employer against loss by misconduct of his employee, the principal in the bond, but will follow the theory of the petition and hold that, if the principal is not liable, neither is the surety, since a surety's obligation is to answer only for the default of the principal.

10. ———: LIABILITY OF SURETY: CONSENT: PLEADING: EVIDENCE. If the name of the principal is called for in a bond, and it is not signed by him, the bond is not only void as to him, but to all who sign it as sureties, whether it is in form joint or several; and in order for the obligee to hold the surety liable he must show that the surety consented to be bound without the signature of the principal. And if the petition avers that the bond was executed by the principal and surety, evidence that the surety consented to be bound without the principal's signature would be incompetent.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferris,* Judge.

AFFIRMED IN PART AND REVERSED IN PART.

*Robert L. McLaran* and *J. M. Holmes* for appellant.

Where the duration of the office of the principal is recited in the bond, though the words in the condition are general as to time, the surety is not liable for defaults of the principal occurring after the expiration of the term recited. Arlington v. Merricke, 2 Saund. 411; Water Works Co. v. Atkinson, 6 East 507; Moss v. State, 10 Mo. 338. And the same is true where it is fixed by law, although not referred to in the bond. Warden of St. Savior's v. Bostock, 5 B. & P. 175; Peppin v. Cooper, 2 Barn. & Ald. 431. Where the duration of the office appears from the pleadings, the liability of the surety is measured thereby. Kitson v. Julian, 4 El. & Bl. 853. Appellant is not liable for defaults of defendant Obert occurring after his re-election as secretary of respondent on March 20, 1896. Bank v. Hunt, 72 Mo. 597; Harris v. Babbitt, 4 Dillon, C. C. 185; Bigelow v. Bridge, 8 Mass. 275; Chelmsford Co. v. Demarest, 7 Gray 1; Savings and Loan Company v. Association, 48 Pa. St. 446; State Treasurer v. Mann, 34 Vt. 371, 80 Am. Dec. 688; Savings Institution v. Ostrander, 57 N. E. 627, 163 N. Y. 430; South Carolina Society v. Johnson, 1 McCord (S. C.) 41; Loan & Building Association v. Price, 16 Fla. 204; Grand Lodge v. Friefeld, 45 N. Y. Supp. 420, 20 Misc. 276; Ins. Co. v. Clark, 33 Barb. 196; Dover v. Trombly, 42 N. H. 59; Board of Admrs. v. McKowen, 48 La. Ann. 251, 19 So. 553; Bank v. Root, 2 Metc. 522; People's, etc., Ass'n v. Worth, 43 N. J. L. 70; Loan Ass'n v. Nugent, 40 N. J. L. 215; County of Scott v. Ring, 29 Minn. 398; Mayor, etc. v. Horn, 2 Harr. (Del.) 190; Norridgewock v. Hale, 14 Atl. (Me.) 943; Ass'n v. Lemke, 40 Kan. 661; Bank v. Briggs, 69 Vt. 12, 37 L. R. A. 845,

37 Atl. 231; County of Wapello v. Bigham, 10 Iowa 39; City Council v. Hughes, 65 Ala. 201; De Colyar on Guaranties, and Principal and Surety, p. 254; Endlich, Building Associations, sec. 204, p. 180; Thompson, Building Associations, sec. 87, p. 156, et seq.; 1 Wait's Actions and Defenses, p. 691; 1 Brandt on Suretyship and Guaranty, sec. 166, p. 243, et seq. Where the party named in a bond as principal fails to sign it, the surety who signed it is not liable thereon, in the absence of evidence that he has waived the signature of the principal. Bunn v. Jetmore, 70 Mo. 228; Gay v. Murphy, 134 Mo. 98; Sacramento v. Dunlap, 14 Cal. 421; Weir v. Mead, 101 Cal. 125, 40 Am. St. Rep. 46; Johnson v. Kimball Tp., 39 Mich. 187; Wood v. Washburn, 2 Pick. 24; Bean v. Parker, 17 Mass. 591; Russell v. Annable, 109 Mass. 72; Goodyear Co. v. Bacon, 151 Mass. 460; Walls v. Dill, 1 Martin (La.) N. S. 592; Curtis v. Moss, 2 Robin (La.) 367; State ex rel. v. Austin, 35 Minn. 51, 26 N. W. 906; Martin v. Hornsby, 55 Minn. 187, 56 N. W. 751; Board of Education v. Sweeney, 1 S. Dak. 642, 48 N. W. 302. The objection that appellant's answer should have been verified by affidavit is made too late. Lith. Co. v. Obert, 54 Mo. App. 240; Hondley v. Railroad, 55 Mo. App. 499.

*William E. Fisse* and *Kortjohn & Kortjohn* for respondent.

(1) The surety is liable as long as the principal remained secretary, even though the board should elect him every week. Westervelt v. Mohrenstecher, 76 Fed. 118; Stevens v. Orten, 43 N. Y. Supp. 792. (2) Even though the contention of appellant, that there was evidence to show that Obert was appointed for one year, were true, yet it is clear that the surety company might have provided in its bond that the obligation should cover defaults in the first employment or any future reappointment. If the appellant might do this by express

language, it is clear that its intention to do so may also be proven by circumstances. The circumstances surrounding the giving of this bond can leave no doubt in one's mind that the surety intended that its bond should cover a period of at least one year from the date of the bond. (3) Another reason why the defendant should not be allowed to make the defense it is making is, that its plea is *"non est factum"* by reason of the non-delivery of the bond. This plea, under section 2186, Revised Statutes 1889, must be verified by affidavit. Gay v. Murphy, 134 Mo. 98. The appellant claims that this point was not made in the circuit court, and that it is too late to make it now. It cites: Lith. Co. v. Obert, 54 Mo. App. 240; Hanley v. Railroad, 55 Mo. App. 499. An examination of said authorities will show that the situation in both of said cases was entirely different from that in the case at bar. Here the plaintiff alleges the execution of the bond, and appellant denies the same; but not under oath. On the trial the bond is offered in evidence, and received over the objection of the defendant. Under these circumstances, it was clearly the duty of the court to admit the bond in evidence, because the execution of it not having been denied under oath, it stood confessed.

VALLIANT, J.—Plaintiff is incorporated as a building and loan association under the laws of this State. Defendant Obert was the secretary of the plaintiff corporation; the Fidelity and Deposit Company of Maryland, a corporation, was the surety on the secretary's bonds. The petition is in two counts. The first is on a bond for $5,000 penalty, dated October 28, 1895, payable to the plaintiff, signed by defendants, conditioned for the faithful performance of his duties by Secretary Obert. There are assigned for breaches of the condition of this bond, nine acts of defendant Obert, each of which consisted in collecting, in his capacity as secretary, a certain sum of money and converting it to his own use. The

respective dates of these acts are given, beginning November 27, 1895, and continuing to December 31, 1896. The alleged misappropriations prior to October 28, 1896, amounted to $5,244.55, being more than the penalty of the bond; those after that date amounted to $1,282.

The second count is on a bond in all respects like that described in the first except the date, which is February 17, 1897, and except, also, as to the signature of Obert about which there is a question. There are assigned for breaches of this bond several defalcations, beginning March 23d and ending September 1, 1897, aggregating $4,712.94.

The defendant Obert filed no answer and default was entered against him. The Fidelity and Deposit Company answered, admitting the execution of the bond sued on in the first count, but averring that it expired February 17, 1896, and that this defendant was not liable on it for acts of Obert after that date; also that plaintiff, in violation of its charter powers, borrowed money and placed the same in the hands of the secretary and thereby cast on him responsibilities not authorized by law, and the plaintiff's loss, if any, was occasioned by that means, and the bond did not cover such acts.

The answer to the second count is to the effect that the principal, Obert, never signed the bond, and therefore the defendant corporation as surety did not become obligated; and also the plea that plaintiff borrowed money and placed it in Obert's hands and thus increased his responsibility, etc., as in the answer to the first count.

During the trial the plaintiff filed an amended petition to which, for answer, the defendant refiled its answer to the original petition. There had been a reply filed to the answer to the first petition, but it was not refiled after the answer was refiled to the amended petition. Upon the trial, however, the pleadings were treated as if the reply was filed and the issues joined on the new matter pleaded in the answer. The case was tried by the court without a jury. There was evi-

dence for the plaintiff tending to prove the acts of defalcation on the part of Obert as stated in both counts of the petition, and on the other hand there was evidence which appellant contends tended to prove that the term of office of Obert was one year beginning February 17, 1895, and that the bond in the first count was intended to cover that period only.  There was a finding for plaintiff on the first count, and its damages assessed at $5,000, a judgment for the penalty of the bond, $5,000, and an award of execution for the amount of damages assessed.  The finding was for the plaintiff also on the second count and an assessment of damages at $4,012.07, and judgment for the penalty of the second bond, $5,000, with an award of execution for the amount of damages so assessed and costs.

The defendant appeals and assigns for error: first, that the court erred in holding appellant liable on the first count for defalcations of Obert occurring after March 20, 1896; second, the court erred in holding appellant liable on the second count at all, because the bond sued on in that count was not signed by Obert, the nominal principal.  Our consideration of the case will be limited to those two points.

I.  In support of its proposition that the surety on the bond for the faithful performance of the official duties of the principal is not liable for defalcations occurring after the expiration of the prescribed term of office, the learned counsel for appellant cite a long list of adjudicated cases and text-writers, and a reference to their brief will show all the authorities on that point that could be desired.  The proposition in its general terms is conceded by the learned counsel for respondent, but they contend in the first place that it is qualified in this, that if it appears that it was the intention of the parties to the contract that the bond was to cover the acts of the officer not only during the period of the first prescribed term, but also during the period of his actual con-

Vol 169 mo—33

tinuance in the office, whether by holding over or re-election, the bond will cover such acts according to such intention, and, secondly, that the evidence in this case does not show any prescribed term of office and that the only limitation as to period of liability is to be found in the character of the contract with appellant, which contemplates an annual renewal of the bond upon the payment of an annual premium, whereby the bond runs for a period of one year from the date of its delivery. In Lionberger v. Krieger, 88 Mo. 160, the sureties on the bond of the cashier of a national bank, whose term of office was prescribed as one year, but who was re-elected yearly and continued in office for nine years, were held liable for his misdeeds during the whole period. In that case, however, the bond on its face expressly provided that it was to cover the acts of the cashier, not only during the first year, but also during all the time he might be continued in office. That case is authority for the proposition that sureties on such a bond may be liable for the conduct of the principal beyond the period of his first term if that is the contract. There is nothing so peculiar in the nature of such a bond as to necessarily limit its operation to the acts of the principal during his first term. The extent to which we approve the proposition contended for by appellant is, that if the term of office is prescribed and the bond is conditioned without express limitation as to period, for the faithful performance of the principal's duties, and nothing else appears to give it a wider effect, it will be construed as intended to cover acts occurring only within the prescribed term. We thus, by construction, read into the bond a limitation as to period. But if it appears from all the circumstances that the intention of the parties to the contract was that the bond, being unrestricted by its own terms, should cover the acts of the principal during his continuance in the office, whether by re-elections or holding over, we can not give it the restricted construction. Of course if the bond in express terms should limit its operation, we

could not, from evidence beyond its face, enlarge its effect, any more than we could, by the application of the principle contended for by appellant, restrict in its effect a bond like that in the case of Lionberger v. Krieger, above mentioned. When it is "so nominated in the bond" there is no room for construction, but it is not so nominated in the bond now under consideration, and if we give this bond the restricted meaning appellant contends for, we must do so because we are satisfied from the evidence in the case that that was the intention of the parties.   When it becomes a matter of construction it is the duty of the court to put itself in an attitude to view the contract from the same standpoint that it was seen by the parties when they entered into it.   [Westervelt v. Mohren-stecher, 76 Fed. 118.]

The evidence shows that Obert was elected or appointed secretary of the plaintiff corporation in January, 1891, and was holding the position in October, 1895, when he applied to the appellant to become surety for him.   This action was taken to comply with the requirement in that respect of the act of the General Assembly, approved April 20, 1895 (Laws 1895, p. 105).   Appellant in response to that application executed the bond sued on in the first count of the petition and received therefor $50 as the premium for one year.   The bond is dated October 28, 1895, conditioned for the faithful performance by the principal of his duties as secretary and is not by its terms limited in duration.

The only evidence bearing on the question of the term of the secretary's office is to the effect that he was elected or appointed in January, 1891, was in that position when he made the application to appellant to become his surety in October, 1895, and also the record of the meeting of the board of directors of the plaintiff corporation, March 18, 1896, in which this appears:   "John C. Obert, was nominated for secretary and nominations closed, and president cast ballot." The act of the General Assembly above referred to directs that

the terms of the officers of building and loan associations shall be prescribed by its by-laws. There was no by-law shown in evidence on this subject. If the duration of Obert's term of office was in issue in this case, the burden of proof was on the defendant, who was attempting to limit its liability to acts committed by him during such term. If such fact was in issue it was by virtue of that part of the answer which stated that the bond expired February 19, 1896, which was an affirmative plea. True, there was no reply to the answer, but the parties treated the reply originally filed as refiled, the case was tried as if issue was joined and it is too late now to make the point that the answer is to be taken as confessed. [State ex rel. v. Phillips, 137 Mo. 259; Ferguson v. Davidson, 147 Mo. 664.] But really, the answer tenders no such issue. It avers that the bond expired February 19, 1896, and that defendant's liability thereon ceased at that date. That is the statement of a mere conclusion. The bond on its face, as we have seen, is not limited as to period, yet the pleader is content to say merely that it expired on the day named, without stating any fact from which the conclusion is drawn. There is, therefore, nothing either in the pleadings or the evidence to justify the contention of appellant that Obert's term of office expired February 19th or March 18th, 1896. It does, however, satisfactorily appear that the parties to the contract understood that the bond was to be limited to one year from its date. The premium for one year was paid and when that year expired a premium for the next year was demanded and paid and what was called a renewal bond was issued. As late as January 27, 1897, the appellant wrote to the plaintiff notifying it that the bond dated October 28, 1895, would expire February 17, 1897, and in order to renew it the new premium would be required. It was in pursuance to this notification that the second premium was paid.

There is no doubt, therefore, that it was the intention of both parties to the contract, that the bond was to cover

the acts of the secretary for a period of at least one year from its date. Whether, as indicated in the letter of January 27, 1897, above referred to, the bond was to run until February 17th, it is unnecessary to inquire, because the defalcations proven to have occurred prior to October 28, 1896, amounted to more than the penalty of the bond, and that was the limit of the recovery under the first count. There was no error in the judgment for the plaintiff on the first count.

II.    The answer to the second count is that the appellant as surety was not liable on the bond declared on because it was not signed by the principal.

Respondent presents the point that this is equivalent to a plea denying the execution of the instrument sued on, and is insufficient because not verified by oath. [Sec. 746, R. S. 1899.] If that point is properly in this case it would require an interpretation of that statute in its application to a different state of facts from those in the light of which we have heretofore construed it. We have decided that the object of the statute was to relieve the plaintiff, or other party pleading it, from the necessity of proving the signature and other acts necessary to the execution of the instrument. [Hart v. Harrison, 91 Mo. 1. c. 422.]    At common law a bond sued on could not be read in evidence until proof was made that it was signed, sealed and delivered by the alleged obligor. Our statute was designed to obviate the necessity of that proof unless the execution was denied under oath. But we have never yet decided that when the plaintiff himself produces in evidence the instrument sued on and it shows on its face that it has not been signed, that the statute requires us to say that it has been signed or that the fact of its execution is immaterial. Proof of the execution may be waived, but the fact of execution is still essential. That point, however, was not made in the trial court; the case was there tried on the theory that the execution of the bond by Obert was a fact in issue and proof on the issue was heard. If the point had

been made at the trial and decided adversely to the appellant, the trial court might in its discretion have allowed the party to amend its plea by fortifying it with the required affidavit. [Kelly v. Thuey, 143 Mo. l. c. 437.] It would not be fair to appellant now to apply the statute as interpreted by respondent to this issue. But respondent also contends that the bond was signed by Obert. In support of this contention respondent refers to the signature of Obert as secretary on back of the bond. The Act of 1895, above referred to, requires that the bond be approved by the circuit court and by the board of directors of the corporation. As if in conformity to the requirement, there is a memorandum at the foot of the bond: "Approved in open court, March 12, 1897, Attest: Thos. B. Rodgers, Clerk." And on the back: "Approved by Board of Directors 2—17—'97, Jas Maccallum, Vice-President North St. Louis B. & L. Ass'n. [Seal] Attest: John C. Obert, Secretary."

That is the signature which respondent thinks amounts to a signing of the bond by Obert as principal.

There is no doubt that a party may become bound in an instrument by signing it in any part, when he signs with that intention. [State v. Wilcox, 59 Mo. 176.] But the signature of Obert in the connection above given shows that it was merely to attest as secretary the signature of the vice-president and the seal of the corporation to the memorandum of approval of the bond by the board of directors. That was not intended as a signing of the bond by Obert as principal, and it can not be so construed.

Respondent also insists that the second bond is, in effect, but a renewal or continuation for another year of the first bond, like an insurance policy, and in support of this refers to the letter of appellant to Obert of date February 11, 1897, inclosing the second bond and designating it as "our renewal bond No. 26368-A." But that theory will not avail the plaintiff, because the penalty of the first, or as plaintiff would

call it, the original bond, is exhausted by the recovery on the first count and there must be a second bond or else plaintiff can go no further.

It is said in the brief of the learned counsel for respondent: "The only practical reason why Obert should sign the bond at all was that in case of default the company might have his written obligation to reimburse them." And in that connection attention is called to the written application of Obert for the first bond in which he obligates himself to reimburse the defendant corporation for all loss, etc., that might occur on the bond or on any renewal thereof. If the only purpose in signing the bond as principal was as suggested by counsel, the clause in the application referred to would seem to cover the omission. But the practical effect of the signature by the principal is more than is suggested. It would authorize the plaintiff to sue and recover in one judgment against him as well as the surety, and such judgment would obviate the necessity of another suit by the surety on the collateral agreement. It would also place the surety in position to avail himself of the various provisions for his protection contained in chapter 58, Revised Statutes 1899. It is also contended that this bond differs from the ordinary bonds given to secure the faithful performance of his duties by the principal, as such bonds were until the recent introduction of corporations organized as this defendant is, to become such surety as a matter of business for profit; that this defendant stands rather in the light of an insurer to the employer against loss by misconduct of his employee and that, therefore, the strict rules of law regarding the rights and liabilities of sureties do not apply. There is much force in the argument, but it is not sustained by the theory of the plaintiff's petition. The instrument sued on is not declared to be an agreement between plaintiff and appellant for insurance or indemnity. It is declared to be a bond executed by a principal and a surety (which indeed is the only theory the case afforded) and the

judgment conforms to the petition. Under these conditions, therefore, it is not a narrow construction to say that the surety is not bound unless the principal is also bound. The surety's obligation is only to answer for the default of the principal. In Gay v. Murphy, 134 Mo. l. c. 106, this court, per BURGESS, J., said: "With respect to official and other statutory bonds, which are in the one instance required by statute to be executed by the officer, and in the other to be given by the principal in the bond, the weight of authority is in accord with the ruling of this court in the Jetmore case, 70 Mo. 228; that is, if the name of the principal is called for in the bond, and it is not signed by him, it is not only void as to him, but as to all who sign it as sureties. And it makes no difference whether it be in form joint or several, and, if the obligee would hold them liable on it, he must show that they consented to be bound without the signature of the principal. When there is no principal, in such case there is no surety." The law as there declared is too plain to question, and we see no reason why it is not applicable to the facts of this case. This bond, in its beginning designates John C. Obert as the principal and appellant as surety, and in the end calls for the signature of both principal and surety. There is no evidence to show that the surety ever consented that the bond should take effect without the signature of the principal. Indeed, such evidence if offered would have been against the face of the petition, which averred that the bond was executed by Obert as principal and the defendant corporation as surety. The judgment rendered by the court was in accordance with the theory of the petition and was against both principal and surety.

Under the record in this case, the judgment should have been for appellant on the second count. The judgment of the circuit court is therefore affirmed as to the first and reversed as to the second count in the petition. All concur.