MINERAL BELT BANK, Respondent, v. ELKING LEAD & ZINC COMPANY, Appellant.

Springfield Court of Appeals, August 5, 1913.

1. PROMISSORY NOTES: Unverified Answer: Admissions Under. In an action against defendant "E" on a promissory note signed "L. K. by J. S.," the answer, unsupported by affidavit, admits, under the provisions of Sec. 1895, R. S. 1909, only that the note sued on was executed and signed just as the note itself shows. It does not admit the charge, construction or conclusion of the pleadings, which must be sustained by testimony *aliunde*.

Bank v. Lead Co.

2. ———: **Answer Unverified: Statutory Provisions: Effect of.**
Sec. 1985, R. S. 1909 (which provides that when a pleading is
founded on an instrument alleged to have been executed by
another party, unless such party deny the execution thereof
by pleading supported by affidavit, the execution of the instru-
ment is taken as confessed), has for its purpose the doing away
with the proof required at common law of the signing and exe-
cution of the instrument.

3. **APPEAL AND ERROR: Position Taken in Trial Court: Bind-
ing in Appellate Court.** In an action against defendant com-
pany, "E," on a promissory note signed "L. K. by J. S.," plain-
tiff tried the case on the theory that it was necessary to show
the connection between "L. K." and defendant company; and
that although the note was in "L. K.'s" name, it was in reality
the defendant company's note. *Held*, that plaintiff will not be
heard to contend on appeal that the answer of the defendant,
unsupported by affidavit, admitted the execution of the note
by defendant company "E."

4. **PROMISSORY NOTES: Action Against One Not Signing:
Cannot be Maintained.** Under the provisions of Sec. 9989, R. S.
1909, suit on a promissory note cannot be maintained against
an alleged principal whose name in no way appears on the
note, the note not being signed in such way as to make it
ambiguous.

5. ———: **Signature: Oral Testimony as to Real Maker.** In an
action on a promissory note against one whose name in no
way appeared on the note, *held* that the trial court committed
error in admitting testimony to the effect that, although the
note was signed by another, it was really executed for defend-
ant and the money thereon advanced intended for defendant.

**On Motion to Modify Opinion.**

6. **APPEAL AND ERROR: Abstract of Record: Appellate Court
Bound by.** The appellate court is bound by the unchallenged
abstract of record.

7. ———: **Record Incorrect: Respondent's Remedy.** Where a
record made up and presented by appellant is incorrect, re-
spondent's remedy is found in "Court Rule 12."

8. ———: **Petition Stating no Cause of Action: Reversal.** Where
a judgment for plaintiff is reversed because the petition states
no cause of action, the court will not remand when a pro-
posed amendment would change the cause of action.

9. **PLEADINGS: Amendments to: Must Not Change Cause of
Action.** A petition which counts solely on the execution and

failure to pay a promissory note may not be amended so as to count solely on money paid for the use and benefit of the defendant, such an amendment being, in effect, to substitute a new cause of action.

10. **JUDGMENT: Reversal: Not a Bar, When.** In an action on a promissory note where the petition contained two counts, one of which the record shows to have been voluntarily dismissed by the plaintiff, a reversal of a judgment for plaintiff without remanding is not a bar to an action on the count which the plaintiff dismissed.

Appeal from Jasper County Circuit Court, Division No. Two.—*Hon. David E. Blair*, Judge.

Reversed.

*Frank L. Farlow* for appellant.

(1) Under a general denial the defendant may substantially maintain a special defense in disproving the contract asserted against him, by proving that the contract was materially different from the one asserted against him; also that there was no such contract as alleged in the petition. Ass'n v. Obert, 169 Mo. 507; Johnson v. Woodman, 119 Mo. App. 98; Clemmens v. Knox, 31 Mo. App. 185; Wilkerson v. Farnham, 82 Mo. 672. (2) Plaintiff cannot for the first time urge that the answer was not verified by affidavit, in the appellate court. To be available it must be urged in the trial court as ground of objection to the introduction of evidence controverting the execution of the contract and if not so raised it is too late. Handley v. Railroad, 55 Mo. App. 499; Wilcox v. W. O. W., 76 Mo. App. 580; Kelley v. Thuey, 143 Mo. 422. (3) The evidence of the cashier that was attempted to be introduced that he thought he was dealing with the corporation was inadmissible for the note was in writing, and no evidence to vary its terms could be received by the court. Sparks v. Dispatch Trans, Co., 104 Mo. 531; Devendorf v. Oil Co., 17 W. Va. 135; Fuller

v. Hopper, 3 Gray, 341; Williams v. Robbins, 16 Gray 77; Pease v. Pease, 35 Conn. 131; Keck v. Brewing Co., 22 Mo. App. 187; Bartlett v. Tucker, 104 Mass. 339. (4) The court erred at the close of all of the evidence on the merits, in refusing the declaration of law asked by the defendant, there not being any evidence offered on the trial of this issue, either to show that the note held by plaintiff had in fact been executed by defendant, or that the maker thereof, Kreilsheimer, claimed or represented that he was acting for the defendant, but on the other hand the evidence conclusively showed that the note was not the note of the defendant, and was not signed by Kreilsheimer in any other manner than by himself individually.

*Thomas & Hackney* for respondent.

FARRINGTON, J.—Suit on note and attachment in aid thereof. Judgment for plaintiff sustaining attachment and judgment for plaintiff on the merits.

Plaintiff, a banking corporation of Webb City, filed its petition on May 28, 1909, in two counts, the second count being voluntarily dismissed ,and the cause was tried on the first count. The following excerpt from the petition is sufficient to show plaintiff's charge and prayer:

"Plaintiff further states that on February 11, 1908, the defendant company borrowed from the plaintiff the sum of three thousand dollars, for which the defendant, by its president thereunto duly authorized, made, executed and delivered to the plaintiff its certain promissory note, bearing said date, by which it promised to pay to the plaintiff or order, ninety days after date, the said sum of three thousand dollars, for value received, with interest at the rate of eight per cent per annum, from maturity until paid, and if not paid annually to become principal and bear the same

rate of interest; which said promissory note is herewith filed and made a part of this petition. Plaintiff further states that the defendant has made payments on said note as follows: May 23, 1908, cash $500; August 13, 1908, by A. M. W. $500; August 20, 1908, $775; November 23, 1908; cash $125; May 6, 1909, cash by Elking $375. That the balance of said promissory note is long since past due, has been demanded and payment refused. Wherefore, plaintiff prays judgment against the defendant for the sum of seven hundred and twenty-five dollars; together with interest thereon at the rate of eight per cent per annum.''

The defendant filed an unverified answer to the merits admitting its incorporation, denying that it made and executed the note described, and charging that no person had power or authority to execute said note and bind the defendant; alleging, also, that the note was made without consideration; and that the proceeds were advanced, if any consideration was given by plaintiff, to L. Kreilsheimer for his personal use, and that plaintiff knew at the time such money was advanced, if it did part with any money, that it was for the benefit of said Kreilsheimer and not for the benefit of the defendant.

An attachment was issued in aid of the suit setting up six of the statutory grounds for attachment, namely, the second, seventh, eighth, ninth, tenth and fourteenth grounds as contained in section 2294, R. S. 1909. A plea in the nature of a plea in abatement was filed denying under oath the allegations contained in the affidavit. The writ issued, and the sheriff seized certain leasehold interests and certain mining and milling machinery on the leasehold owned by the defendant. A redelivery bond was given by the defendant and the case went to trial on the plea in abatement and then on the merits.

In our opinion the judgment on the merits must be reversed and it will therefore be unnecessary to

consider the alleged errors pertaining to the attachment proceeding.

The evidence disclosed that the defendant was a Missouri corporation engaged quite extensively in the mining business; that on its organization L. Kreilsheimer subscribed for and owned practically all the stock. It also shows that L. Kreilsheimer was the president, treasurer, and general manager of the company; that he had an office in Webb City where he directed the affairs of the company, and that this was the defendant's office; that one Jessie Schooler was the stenographer and private secretary of Kreilsheimer and also performed the duties of secretary of the corporation; that defendant, Elking Lead and Zinc Company, owed $5000 to the Webb City Bank; and that when the Mineral Belt Bank was organized, Kreilsheimer took some stock and lent some of his influence to it; that he did not want the Webb City Bank, to which was owed the $5000, to know that any business was being done with the Mineral Belt Bank. Having seen the cashier of the plaintiff bank with reference to a loan of $3000, he left Webb City and went to Chicago, instructing Jessie Schooler, his secretary, that as soon as the bank opened for business she was to go and get the $3000, and according to her testimony, if she could not get it in the company's name to get it in his name. She accordingly went to the bank and signed the note sued on in this action—"L. Kreilsheimer by Jessie Schooler"—taking two certified checks for $1000 each which she mailed to Chicago to Kreilsheimer, and leaving the balance in the plaintiff bank deposited to the personal account of L. Kreilsheimer. The evidence shows that this money was sent to Kreilsheimer in order for him to return it to his secretary to be applied on the debt of the defendant at the Webb City Bank evidenced by its note (for $5000). In the course of a few days, $1500 of the $2000 sent to him was returned to her, and under his instructions she

applied the $1500 to the indebtedness of the defendant company at the Webb City Bank. At least $600 of the money left in the Mineral Belt Bank to the credit of L. Kreilsheimer she drew out and applied on the bills of the defendant company.

There is no contention in this case by either party but that the $1500 which was paid to the Webb City Bank was money received by the defendant company. In other words, $1500 of the money derived on the Kreilsheimer note immediately went to pay a part of the defendant's note, and the evidence is convincing that at least $600 of the balance of the money borrowed on the Kreilsheimer note went to pay the powder and other bills owed by the defendant company. The defendant admitted that it received the benefit of the $1500 and afterward repaid it to the Mineral Belt Bank as shown by the credits of May 23, 1908, August 13, 1908, November 23, 1908, and May 6, 1909. There is one other credit on the note—August 20, 1908—for $775, which, it is admitted, was money applied by the plaintiff on the note which money belonged to L. Kreilsheimer personally. When Kreilsheimer returned from Chicago the plaintiff asked that he make a note for the $3000 signed by the Elking Lead and Zinc Company, which he refused to do, stating that he had used part of this money for his personal affairs, but offered to make a note for $1500, the amount which had been paid on the Webb City Bank's note. Plaintiff's cashier refused to carry out this proposal.

Defendant objected to the introduction of any testimony, when plaintiff prepared to open its case on the merits, on the ground that it was not indebted to plaintiff in any sum and that plaintiff never held the note of the defendant. This objection was overruled and plaintiff was permitted to prove that the note sued on (which was lost after it was filed with the petition in the circuit court) was signed, ''L. Kreilsheimer by Jessie Schooler.'' The evidence of the plaintiff

discloses without question that the note nowhere on its face bore the name of the Elking Lead and Zinc Company, and that there was nothing that could be discerned from the four corners of the instrument itself showing that the Elking Lead and Zinc Company had anything to do with it, and that there was no ambiguity apparent on the face of the note.

This raises two questions of law for us to determine: *First*, the respondent contends that the answer of the defendant, unsupported by affidavit, admits the execution of the note as charged in the petition; and therefore, because the petition charges that the note was made by the Elking Lead Zinc and Company, such unverified answer stands as an admission of the truth of the charge of the petition. *Second*, as to whether the holder of a note may sue a party as principal whose name is in no way connected with the face of the note and such note is plain and unambiguous and from its face calls for no explanation.

On the first proposition, we are of the opinion that the answer unsupported by affidavit would admit that the note sued on was executed and signed just as the note itself showed; that is, that the note described was signed, "L. Kreilsheimer by Jessie Schooler." In other words, the failure to verify the answer admitted no more than the prima facie case made by the face of the note. The purpose of the statute (Sec. 1985, R. S. 1909) is to do away with the proof required at common law of the signing and execution of the note unless its execution is denied under oath. In this case, it would confess the execution of the note sued on but would not admit the charge, construction or conclusion of the pleadings, which must be sustained by testimony *aliunde*. This has been decided by the following cases in this State: North St. Louis B. & L. Ass'n v. Obert, 169 Mo. 507, 69 S. W. 1044; Johnson v. Woodmen of the World, 119 Mo. App. 98, 95

173 Mo. App. 41

S. W. 951; Wilkerson v. Farnham, 82 Mo. 672; Hart v. Harrison Wire Co., 91 Mo. 414, 4 S. W. 123; Love v. Central Life Ins. Co., 92 Mo. App. 192.

In making its case in chief, the plaintiff introduced the witnesses to the transaction to prove that the note, though signed "L. Kreilsheimer by Jessie Schooler," was in fact the defendant company's note. Thus it is clear that plaintiff tried the case on the theory that it was necessary for it to show the connection between Kreilsheimer and the defendant company, and that although the note was in Kreilsheimer's name, it was in fact the company's note, all of which shows that plaintiff at the trial did not rely on the confession of the execution of the note as now contended for by its counsel.

In discussing this question, the Supreme Court in the case of North St. Louis B. & L. Ass'n v. Obert, supra, l. c. 517, 518, used this language: "Proof of the execution may be waived, but the fact of execution is still essential. That point, however, was not made in the trial court; the case was there tried on the theory that the execution of the bond by Obert was a fact in issue and proof on the issue was heard. If the point had been made at the trial and decided adversely to the appellant, the trial court might in its discretion have allowed the party to amend its plea by fortifying it with the required affidavit."

Furthermore, there is a statute bearing upon this question (Sec. 9989, R. S. 1909), as follows: "No person is liable on the instrument whose signature does not appear thereon, except as otherwise expressly provided. But one who signs in a trade or assumed name will be liable to the same extent as if he had signed in his own name." We are unable to find that the facts of this case fall within the exceptions to this statute.

The second proposition, concretely stated, is: May the plaintiff in this case recover of the defendant on the confessed execution of a note signed "L. Kreil-

sheimer by Jessie Schooler," the name of the defendant nowhere appearing on the note?

This presents no mooted question, as the case of Sparks v. The Dispatch Transfer Co., 104 Mo. 531, 15 S. W. 417, clearly holds that a suit on a promissory note cannot be maintained against an alleged principal whose name in no way appears on the face of the note where the note was not signed in such a way as to make it ambiguous. The question is carefully considered in that case and many authorities are cited and discussed. This proposition first came under consideration in this State in the case of Keck v. Sedalia Brewing Co., 22 Mo. App. 187, where the same ruling was announced, and that case, along with the Sparks case, supra, is cited in the case of Duncan v. Kirtley, 54 Mo. App. 655. Under these decisions it is manifest that the trial court committed error in admitting the testimony offered by plaintiff over defendant's objection the effect of which was to show that although the note was signed "L. Kreilsheimer by Jessie Schooler," it was really executed and the money thereon advanced was intended for the defendant, as the cases referred to hold that this would be allowing oral testimony to vary the terms of a plain, unambiguous written contract, which speaks for itself. A negotiable instrument which purports to tell the full story without query will admit of no sequel. Under the law of this State we must hold that the trial court committed error in refusing to direct a verdict at the close of the case for the defendant. The judgment is reversed. All concur.

## ON MOTION TO MODIFY OPINION.

FARRINGTON, J.—Respondent in a motion to modify the opinion concedes that the opinion correctly declares the law in holding that there could be no recovery on the note—on the first count of the peti-

tion—but asks that we remand the cause for a new trial for the purpose of allowing such an amendment of the petition as it deems proper on the theory that it has a cause of action against the defendant for money had and received or money paid for the use and benefit of the defendant. In support of this motion is filed what purports to be a copy of the trial court's minutes by which it does *not* appear that plaintiff voluntarily dismissed the second count of its petition which was based upon the theory which respondent now seeks to pursue. In the appellant's abstract of the record, on which this cause was submitted to this court, the following appears:

"And afterwards on the said 22d day of July, 1912, at the same term of court, the same being the 33d judicial day of the June term, 1912, before the same judge and in the same division came on for trial the above-entitled cause on the merits, the parties appearing as heretofore. And the following entry was made of record in said cause: 'Now this day comes the plaintiff and voluntarily dismisses this cause as to the second count in the petition.' And afterwards, on the said 22d day of July, 1912, and during said regular term of the June term of the court, 1912, the court caused to be entered in said cause on the merits the following judgment," etc.

It seems unnecessary to say anything more on this point than that this court is manifestly bound by the record presented here, *unchallenged*. If the record made up and presented by the appellant was incorrect, our rules point respondent to his remedy. [Rule 12, 168 Mo. App. XV, 122 S. W. VI.]

In its motion respondent states that the reversal of this judgment might be considered an adjudication of the cause of action of which it now seeks to avail itself, and cites cases where appellate courts have reversed and remanded causes and where amendments have been made which were afterward upheld.

In all cases, however, the courts have uniformly ruled that if the proposed amendment is merely a restatement of the same cause of action or in fact states the same cause of action, the amendment is permissible, and under the liberal amendment statute it is the duty of the appellate court to reverse and remand the cause for the purpose of permitting an amendment to be made if it considers that the plaintiff can correctly amend the petition so as not to change the cause of action. In all cases where the proposed amendment would change the cause of action it is held that the cause should not be remanded for the same reason that the trial court cannot under the law permit the substitution of a new cause of action or a change of a cause of action as stated in the original petition. The tests to be looked to in determining whether a proposed amendment sets up a new cause of action or substitutes a different cause of action are announced in the leading case of Scovill v. Glasner, 79 Mo. 449, the decision on this point being stated in the first paragraph of the syllabus as follows: "Two of the tests by which to determine whether a second petition is an amendment or the substitution of a new cause of action are: (1) That the same evidence will support both petitions; (2) that the same measure of damages will apply to both. If both," evidently meaning either, "of these fail the new pleading is not an amendment. Thus, where the first petition was in trover for certain goods, and the second charged that defendant had maliciously sued out a writ of attachment and caused the goods to be seized and sold at a sacrifice: *Held*, that the second stated a new and distinct cause of action, and was not an amendment." That case has been repeatedly followed by the Supreme Court and Courts of Appeals, the only difference arising as to the question of what fell within the tests, or, in other words, as to the *construction* of the rule.

The Supreme Court in the case of Walker v. Railroad, 193 Mo. l. c. 477, 92 S. W. 83, approves the opinion in Schwab Clothing Co. v. Railroad, 71 Mo. App. 241, which exhaustively reviews the question and in which the following language appears (l. c. 249): "The true rule as we gather it from the decisions in this State and elsewhere is, that the proposed amendment must not change the nature of the cause of action, nor destroy the identity of the original transaction. Thus, if A sues B for the conversion of a horse, he cannot amend so as to recover for money had and received in the sale of the horse. This would change the nature of the action, although the evidence in the two actions might be precisely the same. Again, if A should sue B for the conversion of a horse, he could not amend so as to recover for the conversion of an ox. This would change the identity of the transaction." In the case at bar, it is true that plaintiff might have elected to waive the suit on the note and have sued for the debt, just as A might have elected to sue for the value of the horse on an implied sale where there had been a conversion. But plaintiff should no more be allowed, having elected to sue on the note, to abandon that suit and proceed on the theory of a contract implied by law for money had and received or money paid for defendant's use and benefit, than to first sue for the conversion of a horse, and failing, attempt to sue by an amendment on an implied promise. In each instance there would clearly be a substitution of a new cause of action.

Some of the cases in this State would seem from their language to broaden this rule, but an examination discloses that although the language used is most liberal, *the point decided* is governed by the tests laid down in Scovill v. Glasner, supra. For example, in Stewart & Jackson v. VanHorne, 91 Mo. App. 647, the original petition declared on a written contract. The amended petition declared on a written contract (as

shown by the opinion, pp. 651, 652), and showed the
exact language of the written contract actually made.
GOODE, J., speaking for the court (p. 656) said: "Both
actions are in contract and both relate to the same.
subject-matter; both are for the same services, for the
sale of the same lands for the same owner, to the same
purchaser, for the same price, at the same time. So
too, the same character of proof and the same criterion
of damages are applicable to both. The identity of
the transaction on which plaintiffs based their claim
to a judgment against the defendant and the form of
the action as one sounding in contract, was preserved
in the amended petition; and this is the best and most
reasonable criterion by which to determine whether
or not an amendment of a pleading substantially changes
the cause of action so as to be obnoxious to the rule
against departures." In Ingwerson v. Railroad, 150
Mo. App. 1. c. 381, 130 S. W. 411, NORTONI, J., suc-
cinctly states the rule as follows: "As long as the gist
of the action remains the same in the proposed amend-
ment, although the alleged incidents, are different, it is re-
garded as the same cause of action and not the substi-
tution of another, but the authorities rule that the pro-
posed amendment must not only relate to the same trans-
action, *but must adhere as well to the contract or injury
originally declared upon*, sufficient, at least, to main-
tain in a general way the identity of the cause of ac-
tion first stated, so that the character of the proof will
remain about the same." (Italics are ours.) In Rip-
pee v. Railway Co., 154 Mo. 1. c. 364, 365, 55 S. W.
438, the gist of the cause of action was the negligence
of the defendant in approaching a street crossing. The
original statement charged "that plaintiff's cow was
killed by the negligence of the defendant's servants in
running its train." The amended petition charged
the same cause of action but specifically alleged in
what the negligence consisted. This amendment was
held to state the same cause of action that the original

statement did; and in the opinion the following test announced by the Supreme Court of Vermont in the case of Daley v. Gates (65 Vt. 592) is approved: "As long as the plaintiff adheres to the contract or injury originally declared upon, an alteration of the modes in which the defendant has broken the contract or caused the injury is not an introduction of a new cause of action." Our Supreme Court then adds: "If the amendment is merely the same matter more fully or differently laid to meet the possible scope of the testimony it is not a change of the cause of action." In the case of State ex rel. First National Bank v. Bourne, 151 Mo. App. l. c. 118, 131 S. W. 896, this court approved the above quotation from the Vermont case.

In the case at bar the cause of action on the money count would not be "an alteration of the modes in which the defendant has broken the contract," but would set up a different contract and on this different contract seek to establish liability; different in the very character of the action, just as in Parker v. Rodes, 79 Mo. 88, an amended petition stating a cause of action for deceit was held to be a change of the original cause of action counting on trover or conversion of goods; and in Fields v. Maloney, 78 Mo. 172, where it was sought to change from partition to ejectment; and in Heman v. Glann, 129 Mo. 325, 31 S. W. 689, a case similar to the one at bar, where the original petition declared on an agreement which contained conditions and it was held that it could not be so amended as to declare for money lent unconditionally; and in Sears v. Loan Co., 56 Mo. App. 122, where suit was brought for the conversion of a note and by an amended petition an attempt was made to hold stockholders for the value of the note. [See, also, Liese v. Meyer, 143 Mo. 547, 45 S. W. 282, and Ross v. Mineral Land Co., 162 Mo. 317, 62 S. W. 984.]

The question in this case is whether a petition which counts solely on the execution and failure to

pay a promissory note may be so amended as to count solely on money had and received or money paid for the use and benefit of the defendant. Viewing this question in the light of the tests laid down in the cases above cited, it is obvious that the evidence which would support the cause of action on the note would fall far short of supporting the cause of action on the money count. One seeks to make defendant liable for a failure to perform a certain expressed written contract, providing for performance within a certain time and for the payment of a certain rate of interest. The other seeks to hold him on a contract implied in law when the evidence must necessarily show that the defandant received the benefit of certain money, which, with the legal rate of interest, if liability is established, is lawfully due the plaintiff. To sustain the cause of action on the note, the introduction of the same and proof of its execution and an unpaid balance, in the absence of a verified denial, is sufficient to sustain a judgment. On the money count, a default judgment would not stand unless the plaintiff had shown that the money was advanced, that the money was used for the benefit of the defendant, and was borrowed by some one having authority to represent and bind the defendant. Nor would the measure of damages be the same in the one action as in the other even though the amount claimed to be due and unpaid should be found to be the same, because the note set up in this case bore interest at the rate of eight per cent from its maturity (ninety days after date) and provided that if the interest was not paid when due it was to become principal and bear the same rate of interest, while should a recovery be had on the money count the interest collectible would be only the rate prescribed by the statute and that only from the date the defendant received the money. A judgment on the note would be (1) for the unpaid balance of the principal, and (2) for any unpaid interest at eight per cent, which ac-

cording to the terms of the note had become principal, and (3) with interest on both these amounts at eight per cent. No interest exceeding the legal rate can be recovered in the absence of a written agreement. [Sec. 7180, R. S. 1909; Filley v. McHenry, 71 Mo. 417; Balz v. Nelson, 171 Mo. l. c. 690, 72 S. W. 527.]

A case supporting the view that it is not within our power to remand this cause is that of Wade v. Nelson, 119 Mo. App. 278, 95 S. W. 956.

Holding as we do that such an amendment as is proposed would substitute a new cause of action, it therefore follows that our action in reversing the judgment without remanding the cause is not to be construed as a bar to an action on the money count set up as the second count of plaintiff's petition which the record presented to us shows plaintiff voluntarily dismissed in effect taking a nonsuit. It appearing from the record that the statute of limitations has not run against an action on the money count, no serious hardship is cast upon the plaintiff by our decision. The motion to modify the judgment is overruled. *Sturgis, J.*, concurs. *Robertson, P. J.*, dissents, thinking this cause should be remanded.