
## UNITED STATES v. SPRINGFIELD FIRE & MARINE INS. CO.

### No. 629.

United States District Court
W. D. Missouri, St. Joseph Division.
Oct. 22, 1952.

Sam M. Wear, U. S. Atty., Hugh A. Miner, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Hogsett Trippe, Depping, Houts & James, Kansas City, Mo., for defendant.

DUNCAN, District Judge.

This action is brought by the plaintiff against the defendant to recover the sum of $5,658 for the loss by fire, of 4,100 bushels of corn upon which a loan had been made by the Commodity Credit Corporation to William Robbins. At the time of the loss, the corn was under seal in cribs upon the premises of the said William Robbins in Nodaway County, Missouri.

The Government bases its right to recovery upon § 248.216 of the Regulations promulgated by the Commodity Credit Corporation on September 14, 1948 and duly published in the Federal Register, 13 F.R. 5417–5420 which provided that:

"CCC will not require the producer to insure the corn placed under the farm-storage loan; however, if the producer does insure such corn such insurance shall inure to the benefit of CCC to the extent of its interest, after first satisfying the producer's equity in the corn involved in the loss."

The material facts are not in dispute and are before the court in the form of an Agreed Statement of Facts. However, at the time of the trial there was some evidence introduced in addition to the agreed statement.

The defendant denies liability on the ground that the sealed corn was not covered in the policy, and was therefore, not insured; and contends that the standard mortgage clause attached to the policy, as will be hereinafter described, had been released, and was not in effect at the time of the destruction of the corn; that the regulation of the Commodity Credit Corporation as quoted above, had not been promulgated at the time of the issuance of the policy, and therefore was not binding upon the insurer, and that at the time of the fire the corn had been surrendered to the Commodity Credit Corporation under the terms of the loan agreement.

The undisputed facts are that on September 11, 1947 the defendant issued its policy of insurance to William and Virginia Robbins to be effective from October 18, 1947 to October 18, 1950. This policy was in renewal of a like policy dated August 24, 1945. The policy insured William and Virginia Robbins' real and personal property against loss or damage by fire, and it carried a mortgage clause in favor of the First National Bank of St. Joseph.

The First National Bank had made a loan to William and Virginia Robbins on August 24, 1945 in the sum of $27,000 and the insurance policy aforesaid, from the time of its delivery until after the loss over which this controversy has arisen, was in the possession of the mortgagee, the First National Bank. Although the loan to the bank had been fully satisfied on November 23, 1948 and the conditions under which the mortgage clause was issued no longer prevailed, the bank still retained the policy. The First National Bank was also the lending agency for the Commodity Credit Corporation in the making of corn loans.

On or about December 3, 1948 William Robbins made application to the Nodaway County PMA Committee at Maryville, Missouri, for a loan under the 1948 corn loan purchase agreement program on Robbins' 1948 corn crop stored in a crib located on Section 3, Township 65, Range 35 Nodaway County, being one of the properties owned by Robbins.

After due inspection and compliance in all respects with the rules and regulations of the Commodity Credit Corporation, the loan was granted, and on December 20, 1948 William Robbins made, executed and delivered to the First National Bank of St. Joseph, as payee, his promissory note due on or before September 1, 1949 in the sum of $5,658 with interest at 3% per annum from December 20, 1948. The promissory note was secured by chattel mortgage covering the 4,100 bushels of corn heretofore described, and was duly recorded.

On August 25, 1949 the First National Bank, in accordance with the loan agreement, transmitted the said promissory note to the Commodity Credit Corporation at Kansas City, Missouri, for purchase by it, and on September 1, 1949 the First National Bank was given credit in its Federal Reserve Bank account of $5,658 plus interest at 1½% from December 20, 1948 to September 1, 1949.

On September 21, 1949 Robbins executed an application for the extension of the corn loan and for the reseal thereof to December 31, 1950. This application was made under the 1948 reseal loan program, and was duly approved, the necessary inspection made, and the loan extended to July 31, 1950. The loan not having been paid, on July 11, 1950, the Chairman of the Nodaway County Committee addressed a communication to Robbins, in prescribed form, advising Robbins that the loan would be called for delivery as soon as possible. The notice specifically stated:

"1. You may redeem the corn by paying the amount plus accrued interest thereon from the date of disbursement.

"2. If your loan has been repaid, please enter date of repayment on the card. If you prefer to deliver the corn to CCC, so indicate your intention to deliver your corn to CCC, we will issue you delivery instructions as soon as possible after the maturity date."

On July 19, 1950 the producer replied to this communication, advising the committee of his intention "to deliver the grain to CCC." No further communication was had between the producer and the committee prior to August 11, 1950 when the corn was totally destroyed by fire. On August 14, 1950 the producer advised the committee of the loss. The actual cash value of the corn destroyed was $5,504.29. This is arrived at by computing the amount in storage at the sum of 1.3425¢ per bushel.

On August 23, 1950 Commodity Credit Corporation made claim against the defendant for the amount of the loss, and on August 31 liability was denied. On September 19, 1950 defendant paid to William Robbins and Virginia Robbins and the First National Bank as mortgagee, the sum of $7,102.70 in full settlement of their claimed loss. No proof of loss was made by

the insured, Robbins, for the corn in controversy here. The check was endorsed by William Robbins and Virginia Robbins and the First National Bank, and deposited to the credit of William and Virginia Robbins. The mortgage of the bank having been satisfied before the loss, it had no interest therein and became a payee in the check only because the mortgage clause in the policy did not show the satisfaction of its claim as mortgagee.

The pertinent provision of the policy of insurance (section 17) with which we are concerned here provides:

> ˑ "On Grain, threshed seeds, threshed beans, ground feed, manufactured and compounded stock foods while in buildings; also on grain only while in stacks, shocks, swaths, sacks, wagons or trucks on the premises herein described."

It was under this provision of the policy that the Insurance Company satisfied the claim made upon it by Robbins.

Robins testified that he owned several thousand acres of land in Nodaway County; that he was a very large feeder of cattle, sometimes feeding as many as 700 or 800 head, and that at all times consumed large amounts of feed. There is no explanation in the record as to why, under those circumstances, he placed the 1948 corn crop under seal, or did not redeem it by paying the amount of the loan at the time it became due, except that the inference is deducible that the amount of the loan was in excess of the value of the corn, and that it was economically advisable to deliver the corn rather than pay the loan. It is very obvious that the producer was in every respect financially able to pay the loan, had he desired to do so.

█ I think we may first dispose of the last contention of the defendant, that is, that the corn was not in the possession of the producer at the time of its destruction. I cannot agree with the defendant's contention in that respect.

The Chairman of the Board, Mr. Hamilton, testified that in accordance with the rules· and regulations of the Commodity Credit Corporation, when a loan was to become due, notice was given to the producer, as was done in this case, advising him as to his rights, and that if the loan was to be paid by the delivery of the corn to the Commodity Credit Corporation, a survey would be made to determine where the corn might be delivered, and under what conditions it might be stored by the Corporation, and the Producer was then notified where such delivery was to be made. This authority is found in paragraph 5 of the "Mortgage Supplement" which provides:

> "(5) a. Upon maturity of the note (i. e., the date specified therein or such earlier date as the Corporation may make written demand for payment), the note shall be satisfied by payment of the amount thereof, *or by delivery of the commodity subject to the provisions of this section.* If the note is held by the Corporation, the Producer shall give the County Committee of the County where the commodity is stored 30 days' written notice of his intention to deliver. In the event delivery is made at a point other than a shipping point stated in the chattel mortgage, the Producer shall pay to the holder of the note the transportation costs incurred by the holder as a result of such failure to deliver to a shipping point so stated: Provided, however, That the Producer shall not be required to pay such costs if delivery to other than a shipping point stated in the chattel mortgage was made pursuant to instructions issued by the Corporation. If the commodity is corn and is delivered in the ear, the Producer shall pay the holder of the note an amount equal to the cost of shelling the corn." (Emphasis supplied.)

It is undisputed that the necessary survey had not been made and the producer notified where to deliver the corn within the time allowed for such purpose. It is my conclusion that until the corn was delivered, it remained the property of the producer, subject to all the conditions of the mortgage.

As heretofore stated, Robbins testified that he was a large stock feeder, feeding hundreds of heads of cattle, and that at all times he kept upon his various farms, large amounts of grain and stock feed representing many thousands of dollars. As I recall his testimony showed that there were times when he had as much as $100,-000 worth of feed available, and that there was no intention on his part that the policy of insurance should cover the corn in controversy, but that it only cover such feed as was available and owned by him for feeding purposes on his farms.

█ The mortgage clause attached to the policy in favor of the First National Bank cannot inure to the benefit of the plaintiff here. At the time the policy was issued, the property upon which the Commodity Credit Corporation made its loan was not in existence, it was not in anticipation, the defendant was not a party to that agreement in any respect; the loan which the mortgage clause was issued to protect, was solely the interest of the bank and no other party.

A mortgagee whose mortgage was not in existence at the time the mortgage clause was written and attached to the policy could not thereafter claim under it, so we may eliminate from consideration, any claim that might be made under that provision of the policy.

█ We come then to the question of whether the property was insured under the general insurance provisions of the policy, and if so, whether or not the regulation of the Commodity Credit Corporation promulgated with respect to the 1948 corn crop would render this defendant liable.

I might say in passing, that the same provisions in the same language as quoted above, applicable to the 1948 crop, were in effect for 1947 and 1946. Such regulations, having been duly promulgated and published in the Federal Register, have all the binding force and effect of law, and are binding upon all persons who may come within their provisions.

Under the regulations, the producer was not required to insure the loan, but if he did insure it, then the insurance would in-ure to the benefit of the Corporation. Paragraph (c) of the Mortgage Supplement provides:

"c. In the event of an uninsured physical loss of or damage to the commodity occurring without fault, negligence, or conversion on the part of the Producer, and resulting solely from an external cause other than insect infestation or vermin, such loss or damage will be assumed by the Corporation and the amount due on the loan shall be reduced by the amount of the loan made with respect to the quantity of the commodity so destroyed or by an amount equivalent to the extent of the damage as determined by the Corporation, provided the Producer has given the County Committee immediate notice in writing of such loss or damage, and provided there has been no fraudulent representation made by the Producer herein, in the chattel mortgage or in obtaining the loan."

There is no contention here that any of the conditions provided in this paragraph which would render the Producer liable, are present. The evidence indicates that due notice of the fire was given to the Committee. The corn loan was made long after the policy of insurance was issued. There isn't any evidence that the Insurance Company ever had any knowledge or information whatsoever of the existence of the corn, or of the loan, or of the interest of the Corporation.

The testimony of Robbins that he never considered that the policy covered this corn is reasonable in view of the Corporation's regulation that no insurance was required, and that in the event of loss, the Corporation would stand it. Why should the Producer render himself liable for the payment of premiums for insurance that likely would never result in any loss to him?

If the corn had been under seal at the time of the issuance of the policy and it was found that the policy was intended to and did cover the loss of such corn, and thereafter such corn was disposed of and other corn took its place, it might not be contended that the policy did not cover the last corn to be placed under seal and destroyed, but that condition does not exist

here, there was no corn under seal at the time the policy was issued, and it did not come into existence until a year thereafter.

Therefore, it is my conclusion that the insurer had no knowledge of the existence of the risk which is now sought to be included in the policy; that the policy was not intended to, and did not cover the corn under seal, and that the defendant is not liable.

There is one other question raised by the defendant, and that is that even though the corn was covered by the policy, the plaintiff cannot maintain this action in view of the regulation which provides that there shall be no duty upon the Producer to insure the corn, but that if he does, the insurance shall inure to the benefit of the Corporation.

The defendant contends that if any right exists under the regulation in favor of the Corporation, it must be exercised against the Producer, that the Corporation cannot proceed directly against the Insurance Company. In view of the court's determination that there is no liability under the policy on other grounds, I think it is not necessary to determine this question.

Apparently this question has not heretofore been before the courts, and therefore the parties have not been able to cite any cases which throw light upon the question involved.

In view of the aforesaid, the finding and judgment is in favor of the defendant.

If the parties desire to submit specific Findings of Fact and Conclusions of Law, they may do so within ten days.