UNITED STATES of America,
Plaintiff,

v.

The HOME INSURANCE COMPANY OF
NEW YORK, a Corporation,
Defendant.

Civ. No. 1511.

United States District Court
S. D. Illinois, S. D.

July 10, 1956.

John B. Stoddart, Jr., U. S. Atty., Marks Alexander, Asst. U. S. Atty., Robert B. Oxtoby, Asst. U. S. Atty., Springfield, Ill., for plaintiff.

A. M. Fitzgerald, Springfield, Ill., for defendant.

BRIGGLE, Chief Judge.

The undisputed facts together with admissions in the pleadings and concessions made at the trial disclose the following:—

In November, 1952, the Home Insurance Company of New York, defendant, had insured Thomas DeWitt to the extent of $10,000 upon grain upon his farm; on or about January 20, 1953, 5,620 bushels of the insured corn were destroyed by fire and the market value at the time of the loss was $1.48 per bushel, or a total of $8,317.60. After the corn had been cribbed, and prior to the loss by fire, 4,215 bushels of the insured corn had been "sealed" and mortgaged to the Commodity Credit Corporation, of the value of $6,238.20. Of the corn destroyed 1,405 bushels, of a market value of $2,079.40, had not been "sealed" by DeWitt, and defendant takes the position that they are liable under the insurance contract only for this 1,405 bushels of corn. Defendant has, accordingly, made settlement with DeWitt for this sum of $2,079.40, but disclaims liability for the "sealed" corn for the reason that it had been mortgaged to Commodity Credit Corporation. Concededly, DeWitt had paid a premium for $10,000 of insurance on the 5,620 bushels of corn.

#### Effect of "Sealing" Corn Under CCC Program

It is urged by defendant that the "sealing" of the corn under the CCC program added an additional hazard not contemplated by the insurance contract, and to the extent of the 4,215 bushels voided the policy. The facts here do not warrant a conclusion that the hazard was thus increased by the "sealing" of a portion of the corn. It might as well, and perhaps more reasonably, be concluded that the risk remained the same or that the hazard was lessened. Aside from this, however, the evidence, together with the reasonable inferences to be drawn therefrom, warrants the conclusion that defendant's agent was fully apprised of DeWitt's intention to "seal" the corn and the "sealing" of the corn meant only one thing:—that DeWitt was mortgaging same to CCC. No objection was interposed to this by defendant and the conclusion is inescapable that all concerned accepted this as a fact and the risk was continued by defendant with full knowledge of such facts. That there was no endorsement on the policy of the mortgage lien becomes, under such circumstances, immaterial.

DeWitt still retained an insurable interest in the "sealed" corn even after his arrangement with the CCC; he had a right to pay off the mortgage lien and redeem his corn from the lien, and he could either sell the corn or use it in any manner that he saw fit. Instead, it was soon afterward totally destroyed by fire. This is the risk that DeWitt had paid defendant to carry and defendant cannot now, in good grace, be excused from performance merely because of DeWitt's transaction with CCC.

#### The Claimed Release

After the loss, agents of defendant immediately conferred with the insured, and represented to him that his policy covered only that corn that was not "sealed" and that he must file a Proof of Loss covering that corn and other personal property that concededly was covered by the policy without making claim for the corn that had been "sealed." The insured was a farmer by occupation with little education and with little or no experience with insurance contracts, and the insurance carrier owed him the utmost good faith in its dealings with him after the loss. The agents of defendant prepared and had him sign a Proof of Loss and later paid him for the "unsealed" corn destroyed, by a sight draft purporting to contain words of release and settlement in full. In my judgment this was a misrepresentation of both law and fact and cannot be said to be the exercise of good faith on the part

of defendant in their dealings with the insured.

For the reasons stated, the endorsement on the back of the sight draft, signed by DeWitt, containing the printed words, "* * * in full satisfaction, final settlement and compromise of all claims and demands against the Home Insurance Company * * *," should not in good conscience be held to deny the insured the right to any further recovery that he may have lawfully and equitably been entitled to. The same was signed by DeWitt under a misapprehension of the law and facts on the representation of defendant's agents that he must do so in order to obtain settlement for the portion for which they conceded liability. This amounted to a withholding from him of certain facts and information, within its knowledge, contrary to what I believe to have been the moral and legal duty on the part of the insurer to freely and honestly advise the insured of all pertinent facts in relation to his rights in the "sealed" corn. The proof of loss furnished by the defendant contains the statement that 4,215 bushels of the insured corn had been "sealed", and a recital that it was not insured. Defendant freely concedes that this corn was originally covered by the insurance policy and the only reason defendant now claims that it was not insured was because it had been "sealed" and covered by the mortgage to the CCC.

Under such circumstances, it is my deliberate judgment that the insured is not bound by such recitals in the proof of loss or by the printed language in the sight draft, purporting to release defendant from all further liability. I do not wish to be understood as holding that when a man signs a document without reading it and without knowing its contents that he would not under any circumstances be bound by it; but I hold only that under the circumstances here present when he signed the proof of loss and endorsed the check that he is not bound by the language indicating non-liability of defendant for the "sealed" corn or the language purport-ing to release defendant from further liability for the "sealed" corn.

### The Assignment to the United States Government

In seeking recovery against the defendant, plaintiff relies solely upon an assignment, executed by the insured on June 8, 1953, assigning to the CCC all right of action that he might then have in any claim against the defendant. It is suggested by defendant that this in itself was a violation of the terms of the insurance policy which contained a clause that the assignment of the policy should not be valid except with the written consent of the company. In my judgment this contention is unsound for the reason that the insured has never made any assignment of the insurance contract but has only undertaken, after the loss by fire, to assign to the plaintiff any right of recovery that existed in him.

It is further contended by defendant that the insured had no right under the insurance contract at the time of the assignment, and therefore he assigned nothing to the plaintiff. This would be obvious, of course, if defendant's other contentions be accepted. Having concluded that the "sealing" of the corn did not void the insurance contract and that the insured still retained an insurable interest therein, and having concluded that the alleged release, caused to be executed by the insured on misrepresentations by the defendant, is void and of no force and effect, I reach the ultimate conclusion that the plaintiff is entitled under its assignment to a recovery for the loss of the 4,215 bushels of "sealed" corn. I, therefore find that plaintiff is entitled to recover the sum of $6,238.20, together with interest thereon in the sum of $1,065.68, or an aggregate amount of $7,303.88.

The facts in the case of United States v. Springfield Fire & Marine Insurance Company, D.C., 107 F.Supp. 753, affirmed in 8 Cir., 207 F.2d 935, are so widely different from the facts here that they constitute no authority for a holding against the government in this case. Indeed, the Court there held that

there was never any insurance coverage upon the "sealed" corn, and in this case it is conceded that the insurance contract covered the "sealed" corn prior to its sealing.

The foregoing may be taken as and for the Court's findings of fact and conclusions of law. Judgment rendered in favor of plaintiff and against defendant for the sum of $7,303.88 and costs of suit.