**POLORON PRODUCTS, INC. (Dynamark Corporation, assignee), Plaintiff,**

v.

**LYBRAND ROSS BROS. & MONTGOMERY (now known as Coopers & Lybrand), Defendant.**

No. 72 Civ. 3884 (WCC).

United States District Court, S. D. New York.

Oct. 21, 1976.

---

Gold, Farrell & Marks, New York City, for plaintiff; Charles B. Ortner, New York City, of counsel.

Hughes, Hubbard & Reed, New York City, for defendant; William M. Barron, New York City, of counsel.

## MEMORANDUM AND ORDER

CONNER, District Judge:

The above-captioned action, a subject of unhappily protracted litigation, is once again before this Court, on cross-motions pressed by plaintiff Dynamark Corporation (Dynamark) and defendant Coopers & Lybrand (Lybrand). The latter has renewed its earlier motion to dismiss the amended complaint herein, pursuant to Rule 12(b)(6) F.R. Civ.P., for failure to state a claim upon which relief might be granted. Dynamark, for its part, presently moves under Rule 15(a), F.R.Civ.P., for leave to amend the complaint once again.

In an April 3, 1975 Memorandum and Order, the Court retraced in detail the somewhat tortuous background of the instant suit. That history, and its dramatis personae, need not be recited anew. Rather, for present purposes, it is enough to note the following antecedents of the complaint at bar:

(1) In an action commenced by Dynamark in the Northern District of Illinois, Lybrand was joined as a party defendant via an amended complaint filed in September 1970; after transfer of the action to the Southern District of New York, Dynamark was granted leave to file a second amended complaint. In July 1971, that action was discontinued, without prejudice, by the parties' stipulation.

(2) In December 1971, an action that largely echoed the former suit was commenced against Lybrand by Dynamark's present assignor, Poloron Products, Inc. (Poloron), in the Northern District of Illinois. That action was voluntarily discontinued in February 1972.

(3) The present suit was commenced, again by Poloron, in September 1972. Initially assigned to Judge Stewart, the case was transferred to my docket in January 1974. An amended complaint was filed in March 1974, with this Court's leave. The action generated a series of motions, among which was the forerunner of Lybrand's present motion, as well as a motion by Lybrand to dismiss under the "two-dismissal rule," Rule 41(a)(1) F.R.Civ.P. On April 3, 1975, the latter motion was granted. Thereafter, Poloron assigned to Dynamark its rights in prosecuting an appeal and in otherwise pursuing the action against Lybrand. On appeal, in April 1976, the Second Circuit reversed the April 3, 1975 order and remanded the case to this Court.

### I.

■ Lybrand's present challenge to the complaint before the Court must be gauged by reference to familiar principle. Thus, for the purpose of determining a motion to dismiss, a court must assume the truth of the factual allegations contained in the complaint. *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); 2A Moore, Federal Practice § 12.08 (2d ed. 1972). Furthermore, such a motion must be denied unless it is clear that no reasonable interpretation of the facts alleged can support the plaintiff's claim for relief. *Kurzweg v. Hotel St. Regis Corp.*, 309 F.2d 746 (2d Cir. 1962).

Having acknowledged so much, the Court must nonetheless observe that the complaint under contest falls fatally short of disclosing a claim within the cognizance of this forum. To be sure, as presently framed, the complaint invokes this Court's jurisdiction, impliedly under 28 U.S.C. § 1331, pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.

§ 78j(b), and its implementing Rule 10b–5, 17 C.F.R. § 240.10b–5. According to the complaint's narrative, Lybrand, a partnership of certified public accountants, prepared—for Poloron's reference—a balance sheet purportedly reflecting the assets and liabilities of a particular corporation; Poloron, the complaint alleges, purchased all of the outstanding stock in that corporation—to its subsequent and consequent detriment—in reliance upon Lybrand's assurance of the balance sheet's accuracy, an assurance that Poloron later discovered to have been unwarranted.

■ Notwithstanding its recital of the litany customarily intoned by Rule 10b–5 claimants, i. e., that the balance sheet was materially "false and misleading" and "operated as a fraud and deceit upon the plaintiff," the instant complaint is deficient in at least one fundamental respect. That is, to state a private claim grounded in fraud, whether under common law or, more to the present point, under the federal securities law, a complaint must allege more than a false representation by the defendant and a consequent loss to the plaintiff. Rather, such complaint must at the least additionally allege that the representation charged to the defendant was wittingly false. That the element of scienter is a *sine qua non* of claims under Rule 10b–5 has recently been confirmed by *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), and, indeed, has for years been the established rule in this Circuit. See *Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir. 1973); *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442 (2d Cir. 1971).

■ The invocation of conclusory terms such as "fraud" and "deceit" simply cannot serve—as plaintiff herein apparently would

have it—as a viable substitute for at least some allegation respecting scienter, i. e., an intent to deceive or "a willful, deliberate, or reckless disregard for the truth that is the equivalent of knowledge." *Lanza v. Drexel, supra*, at 1305.[1] In the absence of such allegation, the present complaint—alluding as it does to defendant's purported "understate[ment] of * * * liabilities" and "overstate[ment] of * * * assets and net worth," addresses only neutral facts that stand beyond the pale of the federal securities law's anti-fraud provisions.

## II.

In the hope of curing the complaint's deficiency identified above, Dynamark has requested leave to amend by the insertion of, *inter alia*, a clause alleging that Lybrand's representations concerning, and via, its balance sheet "were false and * * * were known by Lybrand to have been false * * * in that Lybrand pretended to have such knowledge of [the facts reflected in] the Balance Sheets, whereas it well knew that it had no such knowledge." With respect to additional proposed amendments, Dynamark avers:

"The same facts [operative in the present complaint] would be realleged in a second claim based upon common law negligence. Federal jurisdiction for this claim can now be independently asserted on the basis of diversity of citizenship, since Dynamark * * * and Lybrand have complete diversity.

" * * * The second amended complaint would increase the *ad damnum* clause by approximately $3,500,000. These additional damages were unknown to us until December 1974, which was

---

1. Observing that numbers of circuit courts "have held that some type of scienter—*i. e., intent to defraud, reckless disregard for the truth, or knowing use of some practice to defraud*—is necessary in such an action. See, *e. g., Clegg v. Conk*, 507 F.2d 1351, 1361–1362 (CA10 1974), cert. denied, 422 U.S. 1007, 95 S.Ct. 2628, 45 L.Ed.2d 669 (1975) (an element of 'scienter or conscious fault'); *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1306 (CA2 1973) ('willful or reckless disregard' of the truth)," the

*Ernst & Ernst* Court expressly declined to "address here the question whether, in some circumstances, *reckless behavior is sufficient for* civil liability under § 10(b) and Rule 10b–5." 425 U.S. at 193, 96 S.Ct. at 1381 n.12.

Accordingly, in the absence of a contrary directive from the Supreme Court, the Second Circuit's formulation of the scienter standard, as quoted in text, *remains binding upon this* Court.

only shortly before this Court's dismissal of the present complaint * * *.

" * * * The amendment would change the name of the parties to reflect the assignment of claims to Dynamark, and Lybrand's change of name."

■■ The Federal Rules of Civil Procedure, by general design, discourage the sacrifice of a potentially meritorious claim on the altar of technicality. Consonant with that end, Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." Thus, as the Supreme Court has observed, a party "ought to be afforded an opportunity to test his claim on the merits," *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), unless

(1) his motion to amend is impelled by "bad faith or dilatory motive," *id.;*

(2) his adversary can demonstrate that he will suffer actual prejudice if the motion to amend is granted, see, *e. g., Roloff v. Arabian American Oil Co.,* 421 F.2d 240, 242 (2d Cir. 1970); *Middle Atlantic Utilities Co. v. S.M.W. Development Corp.,* 392 F.2d 380 (2d Cir. 1968); or

(3) the proposed amendment would constitute no more than a futile exercise, see, *e. g., Middle Atlantic Utilities Co. v. S.M.W. Development Corp., supra,* at 385; *Barr v. WUI/TAS, Inc.,* 66 F.R.D. 109 (S.D.N.Y.1975); *Friedman v. Chesapeake & O. Ry.,* 261 F.Supp. 728 (S.D.N.Y.1966), *aff'd,* 395 F.2d 663 (2d Cir. 1968), *cert. denied,* 393 U.S. 1016, 89 S.Ct. 619, 21 L.Ed.2d 561 (1969).

Thus, although a Rule 15(a) motion is addressed to the court's discretion, the latter is hardly unbounded. See 3 Moore, Federal Practice ¶ 15.08[4], at n.4, 896–97 (2d ed. 1974).

### III.

Lybrand would resist Dynamark's motion by force of, *inter alia,* an April 22, 1975 letter agreement between Lybrand and Poloron. That agreement—drafted by Lybrand's counsel—provided for the exchange of general releases by the parties, but reserved to Dynamark "all right which Poloron may have to appeal from the April 3, 1975 order of dismissal, together with any and all right to further pursue its claim for damages as set forth in the Amended Complaint." The reservation thus prescribed had its roots in a 1971 agreement between Poloron and Dynamark, in which the former had contracted both "to institute suit against Lybrand on account of [its] claim against [Lybrand]," and to assign to Dynamark, upon the latter's demand, Poloron's "rights in and * * * claims against Lybrand underlying such litigation * * *." It was in view of that agreement, Lybrand's counsel now explains, that Poloron and Lybrand "carve[d] out a specific exception from the release, preserving for Dynamark" only the "'claim for damages as set forth in the Amended Complaint'." The latter provision, Lybrand urges, stands as a total bar to the amendments presently sought by Dynamark.

■ It may be noted that, in the more ordinary course of litigation, reference to a general release would first appear in a defendant's pleadings, *i. e.,* as an affirmative defense under Rule 8 F.R.Civ.P.; again in the more ordinary course, such defense might be the subject of a summary judgment motion and, if appropriate, the predicate of a summary judgment. See 6 Moore, Federal Practice ¶ 56.17[49] (2d ed. 1976). Lybrand has raised the question at this rather unorthodox procedural juncture, however, in the apparent hope of demonstrating the futility of the amendments under contest. In any event, it is enough to note that Lybrand's foregoing argument is presently halted by pivotal issues that must await the test of trial. For this Court cannot now determine, as a matter of law, whether or not the terms of the agreement between Poloron and Lybrand pinion Dynamark to the letter of the complaint as presently framed; indeed, even less ambiguous general releases "[do] not always mean what [they] seem[] to say." *Cordaro v. Lusardi,* 354 F.Supp. 1147, 1150 (S.D.N.Y. 1973). Thus, what the parties to that agreement intended to release, on the one hand, and to preserve, on the other, remains a question of material fact that renders

Lybrand's argument, in the present pre-trial context, an anomaly. See *Drake & Beemont Mut. Aid Soc. Against Fire & Lightning v. United States,* 330 F.2d 548, 553 (8th Cir. 1964); *Cordaro v. Lusardi, supra,* at 1150; *Pennwalt Corp. v. Metropolitan Sanitary District of Greater Chicago,* 368 F.Supp. 972, 979 (N.D.Ill.1973); *Mangini v. McClurg,* 24 N.Y.2d 556, 562, 301 N.Y. S.2d 508, 249 N.E.2d 386 (1969).

## IV.

█ Lybrand further suggests that the history of this litigation reflects, on the part of Dynamark and its assignor, the "bad faith and dilatory motive" that should foreclose the relief now sought by plaintiff. On an earlier motion, in a different context, Lybrand had similarly underscored the purported *mala fides* of its adversary. See 72 Civ. 3884, at 12. This Court was not then, and is not now, persuaded that either Dynamark or its predecessor-in-interest has, with respect to this case, acted "vexatious[ly] or in bad faith." *Id.* The Court is not unmindful that Dynamark or its assignor has had—and spent—five earlier opportunities at least to state a cognizable Rule 10b–5 claim. That fact alone, however, does not perforce betray the ill motive charged by Lybrand. Rather, previous paper submissions to the Court disclose that plaintiff has for some time—if not from the outset of this litigation—contemplated what it has simply failed to articulate ably in its pleadings: a cause of action under Rule 10b–5 with scienter founded upon the theory that Lybrand wantonly assured Poloron of the accuracy of a balance sheet recklessly prepared. See Plaintiff's (1975) Brief at 35 ("Further Memorandum of Law Submitted on Behalf of Plaintiff and Certain Third Party Defendants"). Moreover, as has been observed by at least one other court, "neither long delay nor the fact that a proposed amendment is motivated by an afterthought of counsel as to the best theory upon which to proceed, by themselves, suffice as reasons for denying leave to amend." *Green v. Wolf Corp.,* 50 F.R.D. 220, 223 (S.D.N.Y.1970).

Nor does a review of the papers before the Court confirm Lybrand's proposition that plaintiff has prevaricated with respect to the fraud allegation it seeks to press. To be sure, plaintiff has in the past expressly retreated from a position once taken by it, *i. e.,* the contention that Lybrand had participated in a scheme to defraud. But that is not, in any event, the contention upon which Dynamark now would rest.

Furthermore, however awkward plaintiff's attorneys may have been in their past approaches to the statement of a Rule 10b–5 claim, defendant's posture on this motion does not thereby appear the more graceful: the overriding principle remains that the artless drafting of a complaint should not allow for the artful dodging of a claim.

## V.

█ Three additional arguments by Lybrand need not detain us long. First, Lybrand's suggestion that "Dynamark's proposed 1700% increase in requested damages from $220,000 to $3,722,000 should be considered prejudicial in and of itself," Defendant's Brief at 7, could scarcely exert less force. As noted above, a party should not be permitted to amend his pleading if such allowance would visit upon his adversary an undue hardship—*i. e.,* an unwarranted difficulty in the prosecution of his case. A party may hardly resist an amendment curing a defectively stated claim on the ground that it will expose him to a possible liability; he may no more successfully oppose the amendment of an *ad damnum* clause on the ground that it will place him at peril of an increased liability. In any event, it may be noted, the thrust of Rule 54(c) F.R.Civ.P. renders Lybrand's objection in this respect largely academic. See *Wendy v. McLean Trucking Company,* 279 F.2d 958, 959 (2d Cir. 1960).

Lybrand urges the Court to deny the instant motion on the further ground that, at a February 19, 1974 conference,

"Judge Conner ascertained that the amended complaint proposed 9 months earlier had not yet been filed and stated

that if it were not filed within two weeks the Court would entertain a motion to dismiss. The Court specifically announced that no further amendments of the complaint would be allowed." Affidavit of William M. Barron, Esq., at 5.

■ This Court has serious doubt that the admonition expressed under the circumstances thus reconstructed rises to the level of "the law of the case." In any event, it is enough to note that "a court is not inexorably bound by its own precedents," 1B Moore, Federal Practice ¶ .404[8], at 536–37 (2d ed. 1974); especially is a court obliged to veer from its former inclination or prior ruling where the interests of justice warrant such departure. See *Cochran v. M & M Transportation Co.,* 110 F.2d 519, 521 (1st Cir. 1940).

Nor, finally, is the Court persuaded that the proposed amendment of Dynamark's Rule 10b–5 claim would fail to comply with the strictures of Rule 9(b) F.R.Civ.P. Under Rule 9(b),

"the pleader must state the time, place and content of the false [ ]representation, the fact misrepresented and what was obtained or given up as a consequence of the fraud." 2A Moore, Federal Practice ¶ 9.03, at 1925–28 (2d ed. 1975).

■ Although the amendment proffered is not in all respects a happy model of draftsmanship, this Court concludes that plaintiff's allegations at the least satisfy the above-outlined demands. Thus, plaintiff has identified the source of its alleged deception, *i. e.,* the hand-written balance sheet tendered to Poloron on the day the latter purchased the second corporation; the relationship of Lybrand to the accused document; and the material facts purportedly misrepresented. Plaintiff has ascribed its alleged financial loss to the purchase consummated in reliance on Lybrand's alleged misrepresentation. In such a context, "the fact that [any portion of] the complaint [is] pleaded on information and belief [is not] a reason for dismissing the complaint." *Felton v. Walston & Co.,* 508 F.2d 577, 582 n.6 (2d Cir. 1974); see *Schlick v. Penn-Dixie Cement Corporation,* 507 F.2d

374, 379 (2d Cir. 1974); *Shamrock Corporation v. Indian Head,* 424 F.Supp. 679 (S.D. N.Y.1975).

## VI.

■ There remains for consideration Lybrand's contention that the addition of a negligence claim as proposed by Dynamark would inevitably be futile. In this respect at least, Lybrand stands on sure footing. As Lybrand correctly observes, a claim for accountants' negligence is governed by the three-year limitations period provided by Section 214(6) of the CPLR. See, *e. g., Wilkin v. Dana R. Pickup & Co.,* 74 Misc.2d 1025, 347 N.Y.S.2d 122 (Sup.Ct. Allegany Co. 1973); *Wasserman v. Herwood,* 36 Misc.2d 522, 232 N.Y.S.2d 730 (Sup.Ct. New York Co. 1962). That limitations period began to run against the claim in question from the time the cause of action accrued, *i. e.,* December 1, 1967, the date of Poloron's injurious purchase. Thus, although the proposed cause of action "arose out of the conduct, transaction, or occurrence set forth * * * in the original pleading," the Rule 15(c) provision for "relation back of amendments" cannot now avail Dynamark: the original complaint in the present case was filed in September 1972.

As the Second Circuit has noted,

"[i]t is normally proper for the trial judge to consider the statute of limitations on a motion to amend. To delay until there is a later motion to dismiss because the claim is time-barred would be a wasteful formality * * *." *Middle Atlantic Utilities Co. v. S.M.W. Development Corp., supra,* at 385.

Hence, this Court is obliged to disallow any amendment by Dynamark addressed to a negligence claim against Lybrand. In all other respects, however, this Court concludes that justice requires the granting of Dynamark's motion. Plaintiff may serve and file an amended complaint consistent with this decision within seven (7) days of the date hereof, but not later.

SO ORDERED.